YANCEY v. BRUCE.

Opinion delivered October 27, 1913.

1. INSTRUCTIONS—GENERAL OBJECTIONS.—Where the trial court gave on its own motion a general instruction containing several paragraphs, none of which were numbered, but several of which contain correct statements of law, a general objection to the same will be held insufficient. (Page 573.)

2. TRIAL—ARGUMENT OF COUNSEL—PREJUDICIAL ERROR.—After the close of the testimony it is error for the trial court to permit counsel, during his argument to the jury, to give his recollection of a witness' testimony, and call upon the witness to vouch for the correctness of his recollection by asking the witness if that was not his testimony, and receiving an affirmative answer from the witness. (Page 574.)

Appeal from Independence Circuit Court; *R. E. Jeffery,* Judge; reversed.

STATEMENT BY THE COURT.

This was a suit in replevin for timothy hay grown on land belonging to the Meadow Lake Farm Company, in Independence County, Arkansas. The plaintiff claimed that he owned the hay by virtue of a verbal lease for the year 1912. The plaintiff had subrented the land from one Cain, who had leased the land for five years.

Plaintiff testified "that he (Yancey) was to let me have it the remainder of the lease that I had from Mr. Cain, four years. That is what he (Yancey) said. That was in the latter part of 1910, or the first part of 1911. On the day of the Cain sale, I had another talk with him. That was some time in February, 1911. He (Yancey) repeated the same thing."

After Cain died, plaintiff went to Yancey, who had authority to rent the land, and explained to him that he had a verbal contract with Cain to lease the land for the period that Cain had same leased. This conversation occurred in the latter part of 1911. Plaintiff told Yancey what his contract was with Cain, and Yancey agreed to it. Plaintiff stated that Yancey told him, when he spoke to him about it, that he would see his partner, and would call plaintiff up over the phone, and plaintiff, not hear-

ing from him, took it for granted that they didn't want the land.

Yancey testified on behalf of the appellants that Bruce, (appellee) had told him at the time of the Cain sale (in February, 1911) of his contract with Cain, and stated that he told Bruce that he could go ahead with the contract until they disposed of the place. "I told him at the time," says Yancey, "that until I did make some disposition of it, it was all right for him to keep it."

There was further testimony on behalf of appellee to the effect that in May, 1912, he spent four days weeding the meadow, and making it nice and clean; that Yancey was across on the adjoining forty acres, while plaintiff was weeding the meadow, but did not come over to where plaintiff was. He supposed that Yancey saw him. He was less than a quarter of a mile away, and it was perfectly level. One could see plainly a half a mile or a mile. Plaintiff was not disturbed in his possession until July, 1912, when Yancey, as agent for the Meadow Lake Farm Company, took possession of the hay. The plaintiff paid the rent for the year 1911, paying the same in November. He had not paid any rent for the year 1912.

The court, in part, instructed the jury as follows:

"If you find from the evidence, by a preponderance of the testimony, that the plaintiff continued to exercise control and possession of the strip of land in question during the year 1912, and went upon it and cleaned it up and harvested it, and that the defendant, or either of the defendants, had knowledge of his exercising the control and possession of this land, then you would be authorized to find for the plaintiff."

And, further, "If you find for the plaintiff, you will say, 'We, the jury, find for the plaintiff for the market value of the hay at the time it was taken, whatever it was, whatever the proof shows it was.'"

The appellants made a general objection to the instruction, and saved their exceptions to the ruling of the court.

The record shows that Mr. Jones, attorney for the

plaintiff, in his argument to the jury, stated, "Mr. Bruce testified that Mr. Yancey told him in November, 1911, that he could still go ahead with the contract," and when this statement was objected to by counsel for the defendant, and after the objection to same had been overruled by the court and appellants had saved exceptions to the ruling, Mr. Jones continued as follows: "I ask Mr. Bruce, now, in the presence of the jury, if that is not what he said," and Mr. Bruce, sitting by, in response to said statement, nodded his head affirmatively, to which the appellants objected, and, upon their objection being overruled, saved their exceptions.

Other objections were made to argument of counsel, which it is unnecessary to set out. The jury returned a verdict in favor of the appellee as follows: "We, the jury, find for the plaintiff in the sum of $320, the value of the hay." Judgment was entered in favor of the appellee against the appellants in the above sum, and the case is here on appeal.

*Samuel M. Casey*, for appellants.

1. The court's charge to the jury is clearly erroneous. If it be conceded that there was a contract between appellee and Yancey, it was oral and necessarily terminated with the year 1911. Moreover, there was no consideration passing to Yancey for the contract so as to make it binding. Besides not being the law, there is no evidence upon which to base that part of the instruction which permits the jury to find for the plaintiff on finding that he "continued to exercise control over the land for the year 1912," etc., and that the defendants, or either of them, had knowledge thereof.

The landlord of a tenant holding over after termination of a lease may treat him as a trespasser. 10 Am. Rep. 609; 14 Am. Rep. 890, notes.

The instruction as to the form of the verdict was manifest error. The verdict and judgment should be in the alternative. Kirby's Dig., § 6868; 65 Ark. 448; 50 Ark. 300.

2. The closing argument of counsel for plaintiff was

reprehensible and clearly prejudicial. 100 Ark. 107; 61 Ark. 130; 58 Ark. 353; 95 Ark. 233.

*Jones & Campbell* and *John W. Newman,* for appellee.

1. The court's instruction was right under the facts; but appellants, having tendered no instruction covering the points complained of now, and having raised no specific objections to the instruction as given, will not be heard to make specific complaint here for the first time.

2. Under the facts developed in evidence, there existed a tenancy from year to year, to terminate which notice was essential. Kirby's Dig., § 3664; Tiffany, Landlord and Tenant, § 241. But, even if appellee was only a tenant at will, he was entitled to the crop. Tiffany, L. & T., § 249; 71 Ark. 302.

3. Under the circumstances attending the interruption of the argument, there was no impropriety in plaintiff's counsel calling upon him for confirmation of the statement counsel had made.. The court and jury remembered the testimony, and appellant could not have been prejudiced.

WOOD, J., (after stating the facts). Appellants' objection to the instruction can not avail for the reason that the parts of the instruction complained of were separate paragraphs of a general instruction, given of the court's own motion, which contains several paragraphs, none of which are numbered, but several of which contain correct propositions of law. The general objection to the charge as a whole, did not raise in the mind of the trial court the specific objection of which appellants now complain. Moreover, to get the benefit of their exceptions here, the appellants should have called the attention of the trial court to the alleged error of which they here complain. Also, we are of the opinion that the instruction, except as to the form of the verdict, when taken in connection with the evidence, was substantially correct, and could not have misled the jury. The court meant to tell the jury, in that part of the instruction objected to,

that if the plaintiff continued to exercise control over the land for the year 1912 with the acquiescence and consent of the appellants, that they would be authorized to find for the appellee. Upon the testimony tending to show that the appellee was in possession of the land for the year 1912, and that this was with the knowledge and consent of the appellants, the instruction was free from error.

There was testimony to warrant a finding that appellee, at the time the possession of the hay was taken from him, was holding the land under his contract for the year 1912. In other words there was testimony to warrant the jury in finding that appellee, under the contract, was a tenant from year to year.

But the appellants denied that there was any contract for the lease of the land to appellee for the year 1912, and the testimony in their behalf would have also warranted a finding to that effect. They contended that the contract with Bruce ended with the year 1911, that being a verbal contract for the lease of land, it could not last longer than the year 1911, and that the conversation that Yancey had with the appellee, in which he told him that he could go ahead under the contract with Cain until they disposed of the place, had reference to the lease of the land for the year 1911; that this conversation took place some time in February, 1911, and had reference to the rent for that year.

According to the testimony of Yancey, the conversation that he had with appellee in the fall of 1911 had reference to paying appellee for putting in the meadow. He says that he thought that appellee at that time had "thrown up his claim of lease," and was asking remuneration for his trouble and expense in putting in the meadow. Yancey stated that he did not know that appellee had been on the land weeding it out and cleaning it up in the spring of 1912.

In view of the controversy developed by the testimony as to whether Yancey had consented in November, 1911, for appellee to continue the contract for the year

1912, the argument of Mr. Jones was prejudicial. The time for the taking of testimony had closed. It was then a matter for the recollection of the jury as to whether witness Bruce, while on the stand as a witness, had made the statement attributed to him by counsel in argument. It was disputed by the appellants. Appellants contended that Bruce had made no such statement, and it was highly improper and prejudicial for the court to permit counsel to give his recollection of what the witness's testimony was, and call upon the witness, during his argument, to vouch for the correctness of his recollection by asking the witness if that was not what he testified to, and receiving an affirmative answer from the witness. This method of conducting an argument would necessarily result in great prejudice to the opposite party, who, at the time, had no opportunity to cross examine the witness on the matter about which he was being interrogated.

Even if counsel, in his argument, was not misstating the testimony, it would be giving the party he represented an undue advantage to have his statements, as he proceeded in the argument, corroborated by an affirmative and approving nod of the witness. Such method of argument is contrary to the order of procedure prescribed by our statute for the conduct of trials by jury, and should never be tolerated by the court. Kirby's Digest, § 6196. Prejudice must necessarily result in such procedure, for it is tantamount to having a witness, after the testimony is closed, repeat material parts of his testimony without any opportunity afforded the opposite party to cross examine or challenge the accuracy of his statements.

For this error, the judgment must be reversed and the cause remanded for a new trial.